UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PHYLLIS C.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CASE NO. 2:20-CV-420-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

I.     INTRODUCTION

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the Commissioner of Social Security's ("Commissioner") denial of Plaintiff's application for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 4.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred in evaluating the opinions of treating doctors Jeffrey Shaw, Psy.D., Jenny Way, M.D., and Kathleen Worsley, Ph.D., as well as the opinions of non-examining doctors Kristine

Harrison, Psy.D., and Carla Van Dam, Ph.D. The ALJ further erred in evaluating Plaintiff's testimony. Accordingly, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings consistent with this Order.

## II. FACTUAL AND PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits in April 2016, alleging disability as of September 13, 2013. *See* Dkt. 18, Admin. Record ("AR"), 84–85, 223–26. The application was denied on initial administrative review, and on reconsideration. *See* AR 83–110. A hearing was held before ALJ Laura Valente on November 27, 2018. *See* AR 32–82. In a decision dated January 3, 2019, ALJ Valente determined Plaintiff to be not disabled. *See* AR 14–24. The Appeals Council denied review. *See* AR 1–3.

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Ford v. Saul,* 950 F.3d 1141, 1153–54 (9th Cir. 2020) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)).

## IV. DISCUSSION

**A.     Whether the ALJ Reasonably Evaluated the Medical Evidence**

Plaintiff contends the ALJ erred in rejecting opinions from three of her treating doctors and accepting opinions from two non-examining doctors. *See* Dkt. 20, pp. 5–12. In general, the opinions of treating providers should be given more weight than the opinions of doctors who do not treat the claimant.[1] *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Winans v.*

---

[1] The Administration has amended its regulations for evaluating medical evidence, but the amended regulations apply only to claims filed on or after March 27, 2017 and therefore are not relevant to this case. *See* 20

*Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). But the ALJ is not required to accept a treating doctor's opinions. *See Lester*, 81 F.3d at 830. Where the treating doctor's opinions are contradicted—as the opinions at issue here are—the ALJ must give "'specific and legitimate reasons' supported by substantial evidence in the record" to reject those opinions. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

    1. <u>Plaintiff's Treating Doctors – Dr. Shaw, Dr Way, and Dr. Worsley</u>

Dr. Shaw performed neuropsychological testing on Plaintiff in February 2014 and April 2016. *See* AR 481–500. Dr. Shaw completed a medical source statement regarding Plaintiff's mental functioning on February 10, 2018. AR 621–23. Dr. Shaw opined Plaintiff had limitations in understanding and memory, and sustained concentration and persistence, as well as a mild limitation in her ability to travel to unfamiliar places or use public transportation. AR 621–22. Dr. Shaw opined the onset of these limitations was on or before September 11, 2013. AR 622. Dr. Shaw explained that "[a]lthough [Plaintiff] has relative strengths in some cognitive capabilities, her short-term memory and ability to learn new information and procedures will be disabling to her; she is not competitively employable or able to return to her prior occupation or be retrained into a new occupation." AR 623.

Dr. Way was one of Plaintiff's treating providers. *See* AR 468–78, 569–93, 608–16. Dr. Way submitted a letter, dated February 13, 2018, describing her treatment of Plaintiff. AR 624–25. Dr. Way reported she had been treating Plaintiff since November 2014, and Plaintiff had been receiving primary care from the clinic at which Dr. Way worked since 2008. AR 624. Dr. Way opined Plaintiff's conditions had been present since Plaintiff suffered a head injury on

---

C.F.R. § 404.1527 (applicable to claims filed before March 27, 2017); 20 C.F.R. § 404.1520c (applicable to claims filed after March 27, 2017).

1  September 11, 2013. AR 624. Dr. Way opined Plaintiff had ongoing issues with loss of focus,
2  concentration, and memory, including "difficulty focusing on even very basic things." *Id.*

3  Dr. Worsley was Plaintiff's treating psychologist beginning in January 2018. *See* AR
4  594–99, 645–74, 706–35. Dr. Worsley completed two medical source opinions regarding
5  Plaintiff's mental functioning. AR 617–20, 736–38. In an opinion dated February 8, 2018, Dr.
6  Worsley opined Plaintiff had limitations in understanding and memory, sustained concentration
7  and persistence, and adaptation, as well as mild limitations in social interaction. AR 617–18. Dr.
8  Worsley opined the onset of these limitations was on or before May 2013. AR 618. In an opinion
9  dated October 8, 2018, Dr. Worsley opined Plaintiff's limitations had increased in the areas of
10  understanding and memory, sustained concentration and persistence, adaptation, and social
11  interaction. *See* AR 736–37. Dr. Worsley further opined the onset of Plaintiff's limitations was in
12  September 2013.

13  The ALJ gave these opinions little weight. AR 21. She first rejected the opinions of Dr.
14  Shaw, Dr. Way, and Dr. Worsley because they "were rendered several years after the date last
15  insured," which was September 30, 2014. AR 16, 21. Medical opinions may not be rejected
16  solely because they are retrospective. *See Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)
17  (citing *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985)). An ALJ may, however, reject a
18  doctor's retrospective opinion when the doctor did not examine the claimant until after the
19  expiration of her insured status, and the opinion is otherwise contradicted by the medical
20  evidence. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998). Accordingly, the ALJ could
21  not reject Dr. Shaw's opinion on the basis that it was retrospective because Dr. Shaw examined
22  Plaintiff prior to the expiration of her insured status. *See* AR 490–500. The ALJ could reject Dr.
23  Way's and Dr. Worsley's opinions on this basis, so long as they were also contradicted by the
24

medical evidence. *See* AR 468–73, 594–96. But, as discussed below, the ALJ did not establish these opinions were contradicted by the medical evidence. The ALJ thus erred in rejecting the opinions of Dr. Shaw, Dr. Way, and Dr. Worsley for being rendered after the date last insured.

The ALJ reasoned the treating doctors' opinions were inconsistent with the overall record because "despite having some short-term memory problems, [Plaintiff] scored in the high average to superior range on several subtests of the WAIS-IV, and high average on Trails testing." AR 21. But short-term memory impairments may cause disabling limitations not captured by tests measuring, for example, executive and spatial capabilities. Dr. Shaw is the one who performed these tests, and is a medical professional trained to interpret these results, unlike the ALJ. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (recognizing that an ALJ is "not qualified as a medical expert"); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (*cited with approval in Hoffman v. Screen Actors Guild-Producers Pension Plan*, 571 F. App'x 588, 591 (9th Cir. 2014) ("[ALJs] must be careful not to succumb to the temptation to play doctor. . . . The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong.") (internal citations omitted).

The ALJ could have interpreted the overall medical evidence differently than Dr. Shaw, but she needed to explain why her interpretation was better than that of Dr. Shaw, and pointing to test results the doctor was most qualified to interpret is inadequate. *See Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). This reasoning extends to the ALJ's treatment of Dr. Way's and Dr. Worsley's opinions, as the only medical evidence the ALJ pointed to as contradicting their opinions was Plaintiff's

performance on Dr. Shaw's tests. *See* AR 21. Because the ALJ erred in her analysis of those test results, she could not reasonably rely on them to reject the opinions of Dr. Way and Dr. Worsley.

The ALJ further rejected the treating doctors' opinions because she determined they were inconsistent with Plaintiff's daily activities, such as driving short distances, traveling to Chile, traveling to Chicago, and attending family functions such as a bridal shower. AR 21. Plaintiff certainly remained active, but the ALJ has failed to explain how the activities in which Plaintiff engaged contradicted the doctors' opinions. *See Garrison*, 759 F.3d at 1012–13 (citing *Nguyen*, 100 F.3d at 1464). Plaintiff was accompanied in her travels, and regularly forgot things in her daily activities. *See, e.g.*, AR 453, 665, 706, 708, 716, 730. The ability to carry on with some normal activities does not preclude disability, particularly when those activities do not transfer to a work environment. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ last reasoned the treating doctors' opinions were not entitled to weight because they "focus on [Plaintiff's] inability to return to her prior work, but offer no significant support for finding her unable to perform any work during the period at issue." AR 21. This was not a reasonable finding, as each doctor discussed Plaintiff's overall limitations, and did not limit them in scope to her prior work. *See* AR 617–20, 621–25, 736–38. Dr. Shaw, Dr. Way, and Dr. Worsley instead indicated their opinions applied more broadly to Plaintiff's ability to perform in any work environment. *See* AR 623, 625, 738.

In sum, the ALJ failed to give specific and legitimate reasons to reject the opinions of Dr. Shaw, Dr. Way, and Dr. Worsley. Although the ALJ's determination that Dr. Way's and Dr. Worsley's opinions were of less value because they were retrospective has some merit, the Court cannot confidently conclude the ALJ would have rejected these opinions solely on this basis had she properly considered the medical and other evidence. The ALJ thus harmfully erred in

1   rejecting the opinions of Dr. Shaw, Dr. Way, and Dr. Worsley. *See Stout v. Comm'r, Soc. Sec.*
2   *Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

3           2.       <u>Non-Examining Doctors – Dr. Harrison and Dr. Van Dam</u>

4          The Court need not reach Plaintiff's argument that the ALJ erred in giving great weight
5   to the opinions of non-examining psychologists Dr. Harrison and Dr. Van Dam. As explained
6   above, the weight given to non-examining doctors is contingent on the weight given to treating
7   doctors, as more weight should generally be given to those who treat the claimant than those who
8   do not. *See Lester*, 81 F.3d at 830 (citing *Winans*, 853 F.2d at 647). On remand, the ALJ shall
9   reevaluate these opinions in relation to her reevaluation of the opinions of Dr. Shaw, Dr. Way,
10  and Dr. Worsley.

11  **B.**      **Whether the ALJ Reasonably Rejected Plaintiff's Testimony**

12         Plaintiff contends the ALJ failed to give clear and convincing reasons for discounting
13  Plaintiff's subjective symptom testimony. *See* Dkt. 20, pp. 12–15. Plaintiff testified she suffered
14  a waterskiing accident in 2013, after which she could not drive for approximately four months.
15  AR 38–39. She testified she has short-term memory issues that impair her ability to perform
16  basic activities such as cooking and keeping track of time. *See* AR 48, 52, 60–61, 309–10.
17  Plaintiff testified she takes medication for sleep issues, and has tinnitus. *See* AR 50–51, 314. She
18  testified she has difficulty maintaining focus. *See* AR 55, 314.

19         The Ninth Circuit has "established a two-step analysis for determining the extent to
20  which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664,
21  678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective
22  medical evidence of an impairment that "'could reasonably be expected to produce the pain or
23  other symptoms alleged.'" *Id.* (quoting *Garrison*, 759 F.3d at 1014–15). At this stage, the
24

claimant need only show the impairment could reasonably have caused some degree of the symptoms; she does not have to show the impairment could reasonably be expected to cause the severity of the symptoms alleged. *Id.* The ALJ found Plaintiff met this first step. *See* AR 19.

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15). In evaluating the ALJ's determination at this step, the Court may not substitute its judgment for that of the ALJ. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ rejected Plaintiff's testimony regarding the severity of her impairments. *See* AR 19–21. The ALJ reasoned Plaintiff's testimony was inconsistent with: (i) the medical record, which contained minimal documentation of Plaintiff's condition prior to her date last insured and showed good cognitive functioning in some areas; and (ii) Plaintiff's general activity level. *See id.* Neither reason withstands scrutiny.

The ALJ erred in finding Plaintiff's testimony inconsistent with the medical record. First, the record contained enough documentation prior to Plaintiff's date last insured to show her condition. Plaintiff underwent surgery in September 2013 to repair her skull fracture. *See* AR 402–03. Plaintiff followed up with providers as recommended, and underwent neuropsychological testing in the early part of 2014 to assess her cognitive abilities after her head injury. *See* AR 490–500. That the record does not document further treatment from the time of testing until the date last insured is not a basis on which to reject Plaintiff's testimony because

1  it does not establish anything about the severity of Plaintiff's symptoms. Plaintiff did not fail to
2  follow any prescribed treatment, as her doctors seemed to believe Plaintiff simply needed time
3  for her brain to heal. *See* AR 494. The absence of treatment during the few months from March
4  2014 until the date last insured in October 2014 does not contradict Plaintiff's testimony
5  regarding the severity of her symptoms, and the ALJ erred in finding otherwise.

6        The ALJ further erred in finding Plaintiff's testimony was inconsistent with the medical
7  record because neuropsychological testing revealed some good cognitive functioning. As
8  explained above with respect to Plaintiff's treating doctors' opinions, the ALJ erred in finding
9  Plaintiff's claims of impairment due to short-term memory loss were inconsistent with her good
10 performance on tests of executive and spatial functioning. *See supra* Part IV.A.1.

11       Similarly, the ALJ erred in rejecting Plaintiff's testimony as inconsistent with her general
12 activity level. "[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not
13 in any way detract from her credibility as to her overall disability. One does not need to be
14 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.
15 2001) (quoting *Fair*, 885 F.2d at 603). Plaintiff remained active, but had others accompanying
16 her in her travels, and regularly forgot items necessary for her daily activities. *See, e.g.*, AR 453–
17 54, 483, 597, 645, 647, 663, 665, 706, 708. The ALJ thus failed to give clear and convincing
18 reasons for rejecting Plaintiff's testimony, and harmfully erred.

19 **C.  Scope of Remand**

20       Plaintiff asks the Court to remand this matter for further administrative proceedings. The
21 Court agrees this is the appropriate remedy. *See McCartey v. Massanari*, 298 F.3d 1072, 1076
22 (9th Cir. 2002).

1   On remand, the ALJ shall reevaluate the opinions of Dr. Shaw, Dr. Way, and Dr.

2   Worsley, and reevaluate the opinions of Dr. Harrison and Dr. Van Dam as necessary. The ALJ

3   shall reevaluate Plaintiff's testimony. The ALJ shall conduct all further proceedings necessary to

4   reevaluate the disability determination in light of this opinion.

5                               V.   CONCLUSION

6   Based on the foregoing reasons, the Court finds that the ALJ improperly concluded

7   Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and

8   this matter is remanded for further administrative proceedings in accordance with the findings

9   contained herein.

10   Dated this 22nd day of October, 2020.

                                                       _____
                                                       David W. Christel
                                                       United States Magistrate Judge